UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| ALLAN H. KERNER, and ROBERT EDDY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| v. | )    Case No. 2:25-cv-00899-cr |
| | ) |
| | ) |
| BRIGHTHOUSE LIFE INSURANCE | ) |
| COMPANY,[1] | ) |
| | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS AND
GRANTING PLAINTIFFS LEAVE TO AMEND**
(Doc. 7)

On October 27, 2025, Allan Kerner and Robert Eddy (collectively, "Plaintiffs")

brought suit against Brighthouse Life Insurance Company ("Defendant") in the Vermont

Superior Court. On November 26, 2025, Defendant removed the action to this court on

the basis of diversity jurisdiction. In their Complaint, Plaintiffs assert four claims against

Defendant: negligence (Count I), consumer fraud in violation of the Vermont Consumer

Fraud Act (the "VCFA") (Count II), breach of fiduciary duty (Count III), and

unconscionable penalty (Count IV).[2]

On December 3, 2025, Defendant moved to dismiss Plaintiffs' Complaint. (Doc.

---

[1] Plaintiffs concede that they improperly named Brighthouse Services, LLC d/b/a Brighthouse
Life Insurance Company as a defendant in this action and "consent to the dismissal of
Brighthouse Services, LLC from this action." (Doc. 22 at 1 n.1.) The court therefore
DISMISSES Brighthouse Services, LLC and directs the clerk's office to substitute Brighthouse
Life Insurance Company as the Defendant in this action. *See* Doc. 7 at 1 n.1 ("The appropriate
defendant in this action, if any, should be Brighthouse Life Insurance Company only.").

[2] In their opposition, Plaintiffs claim that their "Complaint states claims for . . . bad faith[] and
breach of the implied covenant of good faith and fair dealing." (Doc. 22 at 2.) However,
Plaintiffs' Complaint does not assert these causes of action. *See, e.g., Louis v. New York City
Hous. Auth.*, 152 F. Supp. 3d 143, 158 (S.D.N.Y. 2016) ("[P]laintiffs cannot use their opposition
to the motion to dismiss to raise new claims[.]") (internal quotation marks and citation omitted).

7.) On January 15, 2026, Plaintiffs opposed the motion, (Doc. 22), and on February 12, 2026, Defendant filed a reply. (Doc. 25.)

Plaintiffs are represented by Harold B. Stevens, III, Esq. Defendant is represented by Adam Mordecai, Esq.

## I.   Allegations in the Complaint.

Plaintiffs allege that, on or about July 18, 2007, Plaintiff Kerner entered into a variable annuity contract ("MetLife Contract") with MetLife Investors USA Insurance Company ("MetLife"), using Plaintiff Eddy as his investment advisor. Approximately ten years later, in or around March 2017, MetLife allegedly "transferred or 'spun off' its annuity policies to [Defendant] to create two independent companies. The contracts were shifted to Defendant [] and thereafter . . . guaranteed by Defendant[.]" (Doc. 10 at 2, ¶ 8.)

In July 2017, Plaintiffs allege that they requested the Brighthouse Annuity Contract and MetLife Contract to start income from Plaintiff Kerner's Individual Retirement Account Annuity ("IRA") to meet required minimum distributions ("RMD"). Plaintiffs claim that, following a phone call with Defendant "requesting the necessary form to initiate lifetime income payments and satisfy the RMD requirements," Defendant provided two forms: one for initiating lifetime income ("Variable Annuity Election Form") and another for setting up RMD payments ("RMD Form"). *Id.* at ¶ 10. Plaintiffs assert that "[b]oth forms were duly signed and faxed together to Defendant [], without any income amounts specified. Accordingly, Defendant [] calculated all income payments." *Id.* at ¶ 11.

Plaintiffs allegedly "recently discovered that Defendant [] made a negligent and unauthorized withdrawal[]" in an amount over the $15,230.16 RMD by $671.77, "which resulted in a penalty[]" and a decrease in Plaintiff Kerner's total guaranteed withdrawal amount from "$304,603.25 at 5% ($15,230.16 income per year for life) [] to $209,753.74 at 5% ($10,487.68 [income per year for life])." *Id.* at 3, ¶¶ 12-13. Plaintiffs assert that "[t]he cause of the over withdrawal was Defendant['s] [] automated RMD program using their inflated RMD figure, which caused the fall in value and penalty." *Id.* at ¶ 15.

According to Plaintiffs, the MetLife Contract contains the following penalty

clause: "If a withdrawal results in cumulative withdrawal for the current Contract Year exceeding the Annual Benefit Payment, the Total Guaranteed Withdrawal Amount will be reduced by an amount equal to the difference between the Total Guaranteed Withdrawal Amount after the withdrawal and the Account Value after the withdrawal (if lower)." *Id.* at ¶ 18 (internal quotation marks and citation omitted). Plaintiffs claim "[t]his penalty clause changed the income payment by reducing the income base to the account value which is a distinct measuring system of the annuity." (Doc. 10 at 3, ¶ 19.) Plaintiffs further allege that Defendant "should have sent" Plaintiff Kerner "only one annuity withdrawal form for an IRA contract which would have handled both RMD and lifetime income instead of the two they sent for signature." *Id.* at 4, ¶ 22. Plaintiffs note that "[t]he annuity lifetime withdrawal forms at many other annuity companies have a check box next to a statement that states '[i]t is not my intention to negatively impact my benefits by requesting this withdrawal. Please modify my request and withdraw the maximum amount available that will not negatively impact my living benefit.'" *Id.* at 3-4, ¶ 20.

On or about February 28, 2025, Plaintiff Eddy allegedly notified "Stuart Reff at PKS Investments of the mistake by Defendant [] who confirmed the issue was with Defendant[.]" *Id.* at 4, ¶ 21. Plaintiffs claim that the penalty incurred "may cause" Plaintiff Kerner "to run out of his monthly funds in [six to seven] years, instead of being income for life." *Id.* at ¶ 23. According to Plaintiffs, "[a]s a result of Defendant's negligence, consumer fraud[,] and breach of fiduciary duty," Plaintiff Kerner "has been damaged by a substantial reduction of approximately $95,000.00 more or less[]" and, therefore, "Plaintiffs request a declaratory judgment that Defendant be held liable for the reduction in the value of the annuity income base and treble damages as the court shall deem just[.]" *Id.* at 5.

## II.    Conclusions of Law and Analysis.

### A.    Standard of Review.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Parties must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a party will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

**B.    Whether the Court May Consider Plaintiff Kerner's Affidavit.**

In their opposition to the motion to dismiss, Plaintiffs cite an affidavit of Plaintiff Kerner, but no such affidavit has been filed with the court. Even if one had been filed, Plaintiffs cannot supplement their complaint in this manner in response to a Fed. R. Civ. P. 12(b)(6) motion to dismiss without the court converting the pending motion to dismiss into one for summary judgment. *See* Fed. R. Civ. P. 12(d); *see also MCGM, GmbH v. OPTA Grp. LLC*, 2024 WL 1250629, at *3 (S.D.N.Y. Mar. 21, 2024) (explaining that a court "may not properly consider a testimonial affidavit that makes factual assertions without converting the motion into one for summary judgment[]"), *aff'd*, 2025 WL 262589 (2d Cir. Jan. 22, 2025). The court declines to convert Defendant's motion to dismiss into one for summary judgment because neither party has requested to proceed to summary judgment and discovery has not yet taken place.

4

### C. Whether the Court May Consider the MetLife Contract, Variable Annuity Election Form, and RMD Form.

To their Complaint, Plaintiffs attach as exhibits the MetLife Contract, the Variable Annuity Election Form, and the RMD Form. "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted). If there are any contradictions between these documents and Plaintiffs' allegations, the documents will prevail. *See Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) ("[T]he court must generally accept as true all of the factual assertions in the complaint. However, there is a narrow exception to this rule for factual assertions that are contradicted . . . by documents upon which the pleadings rely[.]") (internal citation omitted); *Mumin v. City of N.Y.*, 760 F. Supp. 3d 28, 48 (S.D.N.Y. 2024) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.") (internal quotation marks and citation omitted); *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) (discrediting the complaint's allegations that were "belied" by documents attached to the complaint).

### D. Whether Plaintiff Eddy Has Standing to His Bring Claims.

Defendant argues that, because Plaintiff Eddy is not a party to the MetLife Contract, "Plaintiff Eddy does not have the standing necessary to pursue any claims against [Defendant]." (Doc. 7-1 at 6.) Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "[S]tanding in federal court is a question of federal law, not state law." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013). "[A]t the motion to dismiss stage, the plaintiff [] 'bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (alteration adopted) (citation omitted).

5

To establish Article III standing, a plaintiff must plausibly allege "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (citation omitted). To constitute an injury in fact, there must be "a concrete harm[,]" which "include[s], for example, reputational harms[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425-26 (2021). Because the Article III standing elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).

"In addition to these core constitutional requirements, litigants must also satisfy prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015) (internal quotation marks and citation omitted). "The doctrine of 'prudential standing' generally bars litigants from asserting the rights of third parties." *Id.* at 46. The third-party standing bar "prevents 'litigants from asserting the rights or legal interests of others simply to obtain relief from injury to themselves.'" *New York State Citizens' Coal. for Child. v. Poole*, 922 F.3d 69, 75 (2d Cir. 2019) (alteration adopted) (quoting *Keepers, Inc.*, 807 F.3d at 40).

In accordance with those principles, "a non-party to [a] contract lacks standing to sue for breach" unless the non-party is a third-party beneficiary of the contract. *Rynasko v. New York Univ.*, 63 F.4th 186, 194 (2d Cir. 2023). Plaintiff Eddy is neither a party to nor a third-party beneficiary of the MetLife Contract between Plaintiff Kerner and Defendant, and Plaintiffs do not contend otherwise. Instead, Plaintiffs assert that Plaintiff Eddy has standing because he "may be liable to [Plaintiff] Kerner for not disclosing the penalty clause in the RMD and for not warning [Plaintiff] Kerner of the withdrawal penalty[,]" which "may adversely impact his reputation as an investment advisor as an

6

agent of the customer." (Doc. 22 at 5-6.) These facts are not contained in the Complaint.[3] Because "[t]he standing inquiry focuses on whether the plaintiff is the proper party to bring th[e] suit[,]" *Raines v. Byrd*, 521 U.S. 811, 818 (1997), even if properly alleged, Plaintiff Eddy's potential liability to Plaintiff Kerner does not confer standing to bring suit against Defendant, although it may permit Plaintiff Kerner to bring a claim against him.[4]

In their Complaint, Plaintiffs also do not allege any facts indicating that Plaintiff Eddy suffered reputational harm from Defendant's alleged wrongful acts. As a result, such harm remains unalleged and a speculative possibility in the future. Moreover, it is unclear how such harm could be redressed by this action because Plaintiffs do not seek reputational harm damages.

For the foregoing reasons, the Complaint does not plausibly allege that Plaintiff Eddy has standing to bring suit against Defendant based on speculative, derivative harm that has not been plausibly alleged. Plaintiff Eddy's claims are therefore DISMISSED.

### E.    Whether Plaintiff Kerner's Claims Are Time-Barred by Vermont's Statute of Limitations.

Under Vermont's statute of limitations,[5] 12 V.S.A. § 511, "[a] civil action, except

---

[3] The court agrees these facts may create a conflict of interest inherent in representation of both Plaintiffs by the same attorney and advises Plaintiffs' counsel to consult the Vermont Rules of Professional Responsibility.

[4] Plaintiffs cite *Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F. Supp. 2d 228 (S.D.N.Y. 1999) to argue that "an investment advisor" who "act[s] as an agent of funds it advised and enter[s] contracts on behalf of the funds" can have "standing in certain circumstances." (Doc. 22 at 6.) In *Granite Partners*, securities funds, by and through an advisory board which was given exclusive authority "to commence, prosecute, settle, or otherwise resolve all unresolved claims and causes of action" on behalf of the funds, brought suit against broker-dealers. *Id.* at 233. The court found that the advisory board could sue for breaches of contracts entered into by an investment advisor because the investment advisor was "operating as an agent of the [f]unds" and "writing on behalf of the [f]unds." *Id.* at 248. *Granite Partners* is inapt here, where Plaintiff Eddy brought suit in his own right rather than another entity bringing suit based on his transactions.

[5] "[A] federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits[.]" *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494-97 (1941)). Under Vermont's choice-of-law rules, "the court applies the law of the state that 'has the most

one brought upon the judgment or decree of a court of record of the United States or of this or some other state, and except as otherwise provided, shall be commenced within six years after the cause of action accrues and not thereafter." "Raising a statute-of-limitations defense in a motion to dismiss is appropriate and such motion will be granted when 'the face of plaintiff's complaint shows his claim to be time-barred.'" *Sutton v. Purzycki*, 2022 VT 56, ¶ 80, 217 Vt. 326, 365, 295 A.3d 377, 404 (alteration adopted) (citation omitted); *see also Goldberg v. Dufour*, 2020 WL 620899, at *17 (D. Vt. Feb. 10, 2020) ("Unless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development.") (alteration adopted) (internal quotation marks and citation omitted).

Generally, "[t]he statute of limitations begins to run when a party can sue on a cause of action." *Besaw, Tr. of Revocable Living Tr. of Ernest P. Giroux v. Giroux*, 2018 VT 138, ¶ 19, 209 Vt. 388, 395, 205 A.3d 518, 523 (citations omitted). Defendant contends that Plaintiff Kerner's causes of action began to accrue in 2017, when Defendant gave him the Variable Annuity Election Form and RMD Form, because that is when "the alleged breach or actionable conduct occurred[.]" (Doc. 7-1 at 9.) However, Plaintiff Kerner argues that the discovery rule applies to his claims because "the penalty incurred was not discovered until February 28, 2023." (Doc. 22 at 9.)

"The discovery rule postpones the accrual of a cause of action when the potential plaintiff is unaware that he has been injured at the time the wrongful conduct occurred." *Shovah v. Mercure*, 44 F. Supp. 3d 504, 509 (D. Vt. 2014). Under the discovery rule, "accrual occurs upon 'discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery.'" *Sutton*, 2022 VT 56, ¶ 81, 217 Vt. at 365, 295 A.3d at 404-05 (citation omitted). "In other words, discovery occurs and

---

significant relationship to the occurrence and the parties.'" *Soojung Jang v. Trs. of St. Johnsbury Acad.*, 331 F. Supp. 3d 312, 329 (D. Vt. 2018) (citation omitted). The parties do not dispute that Vermont law applies to Plaintiff Kerner's claims as the MetLife Contract was issued to him in Vermont, the withdrawn amounts were sent to him in Vermont, and he continues to reside in Vermont.

8

the limitations period begins when a plaintiff 'knows or should know of the injury and its cause.'" *Id.* at ¶ 81, 217 Vt. at 365, 295 A.3d at 405 (citation omitted).

"[T]he discovery rule applies whenever a limitations period does not set forth a determinable fact that triggers accrual." *Pike v. Chuck's Willoughby Pub, Inc.*, 2006 VT 54, ¶ 16, 180 Vt. 25, 32, 904 A.2d 1133, 1138 (citation omitted); *see also JLD Props. of St. Albans, LLC v. Patriot Ins. Co.*, 576 F. Supp. 3d 172, 181 (D. Vt. 2021) ("Where, in context, the coverage triggering event took place on a date certain and the [p]olicy uses this date for the commencement of the limitations period, no discovery rule is necessary."). "By contrast, where a limitations period simply refers to a set period of time from 'accrual' of the action, this requires additional factual inferences to determine the date on which the action accrued—namely, when the plaintiff discovered or should have discovered his or her injury." *Pike*, 2006 VT 54, ¶ 16, 180 Vt. at 33, 904 A.2d at 1138 (citation omitted).

> "Two common themes run through the cases applying the discovery rule of accrual," which "is essentially a rule of equity." The first is that the rule often applies "to types of actions in which it will generally be difficult for plaintiffs to immediately detect or comprehend" the wrongful conduct or the injury caused by that conduct; the second is that "courts have relied on the nature of the relationship between defendant and plaintiff to explain application of the delayed accrual rule," and then generally applied the rule "to confidential or fiduciary relationships."

*Clarke v. Abate*, 2013 VT 52, ¶ 24, 194 Vt. 294, 310, 80 A.3d 578, 587 (internal citation omitted).

Because "Vermont law . . . generally applies [the] 'discovery rule' to actions under 12 V.S.A. § 511[,]" *Hulsen v. Burlington Sch. Dist.*, 2021 WL 6750970, at *4 (D. Vt. Apr. 28, 2021), the court finds it may apply to Plaintiff Kerner's claims in this case. *See Univ. of Vermont v. W.R. Grace & Co.*, 565 A.2d 1354, 1357 (Vt. 1989) ("[T]he discovery rule should be read into § 511."). The Vermont Supreme Court has cautioned that the discovery rule is often a factual question for the jury. *See Pike*, 2006 VT 54, ¶ 18, 180 Vt. at 33, 904 A.2d at 1139 ("Determination of the date of accrual under the discovery rule is a factual issue that generally should be decided by the jury."); *Howard*

9

*Bank, N.A. v. Est. of Pope*, 593 A.2d 471, 472 (Vt. 1991) ("When discovery has or should have occurred is normally a question of fact for the jury.").

In his Complaint, Plaintiff Kerner claims he "recently discovered" Defendant's alleged mistake and the resulting penalty. (Doc. 10 at 3, ¶ 12.) Although the statements from which he discovered Defendant's alleged mistake and the resulting penalty were dated April 1, 2018, and June 30, 2018, it is unclear when Plaintiff Kerner received or viewed those statements. It is also unclear when the surrender charges were applied to Plaintiff Kerner's IRA and when the subsequent reduction in the total guaranteed withdrawal amount occurred. As a result, the court cannot determine from the four corners of the Complaint whether Plaintiff Kerner's claims are time-barred by the statute of limitations as a matter of law.

For the foregoing reasons, the court DENIES Defendant's motion to dismiss on statute of limitations grounds.

### F.    Whether Plaintiff Kerner's Negligence Claim Should Be Dismissed (Count I).

Defendant argues that the economic loss rule bars Plaintiff Kerner's negligence claim because his "alleged losses are purely economic in nature." (Doc. 7-1 at 6.) "Vermont has adopted the economic loss rule, which prohibits recovery under tort for economic losses which are not also accompanied by tangible, physical harm." *Hunt Const. Grp., Inc. v. Brennan Beer Gorman/Architects, P.C.*, 607 F.3d 10, 14 (2d Cir. 2010) (citing *Breslauer v. Fayston Sch. Dist.*, 659 A.2d 1129, 1132 (Vt. 1995)). "The underlying premise of the economic loss rule is that negligence actions are best suited for 'resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement.'" *Springfield Hydroelectric Co. v. Copp*, 779 A.2d 67, 70 (Vt. 2001) (citation omitted).

Plaintiff Kerner contends that "Defendant's reliance on the economic loss rule is misplaced" because he alleges "independent duties and deceptive conduct that are

10

extraneous to mere nonperformance of contractual promises." (Doc. 22 at 7.) However, Plaintiff Kerner's characterization of his negligence claim does not negate his request to recover the "reduction in the value of the annuity[,]" (Doc. 10 at 5), which is a purely economic loss, without any accompanying physical harm. *See EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 30, 181 Vt. 513, 524, 928 A.2d 497, 507 ("[N]egligence actions are limited to those involving [] physical injury[.]"). Plaintiff Kerner does not identify any exception to the economic loss rule that applies in this case. *See Veljovic*, 2025 VT at ¶ 12, 342 A.3d at 946.

For the reasons stated above, Plaintiff Kerner's negligence claim is DISMISSED because it is barred by the economic loss rule.

### G.    Whether Plaintiff Kerner's Consumer Fraud Claim Should Be Dismissed (Count II).

The VCFA prohibits "unfair or deceptive acts or practices in commerce[.]" 9 V.S.A. § 2453(a). To bring an action for consumer fraud under the VCFA, 9 V.S.A. § 2461(b) "requires a 'consumer' to show either (1) reliance on a deceptive act in contracting for goods or services or (2) damages or injury from an unfair or deceptive act." *Dernier v. Mortg. Network, Inc.*, 2013 VT 96, ¶ 56, 195 Vt. 113, 136, 87 A.3d 465, 481 (citing 9 V.S.A. § 2461(b)).

"To establish a 'deceptive act or practice' under the VCFA requires three elements: '(1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product.'" *JLD Props. of St. Albans, LLC v. Patriot Ins. Co.*, 576 F. Supp. 3d 172, 179 (D. Vt. 2021) (citations omitted). "'Whether an act is "unfair" is guided by consideration of several factors, including (1) whether the act offends public policy, (2) whether it is immoral, unethical, oppressive or unscrupulous, and (3) whether it causes substantial injury to consumers.'" *Id.* (citation omitted).

Because Plaintiff Kerner's VCFA claim "sounds in fraud," he "must state with particularity the circumstances constituting fraud." *City of Hialeah Employees' Ret. Sys.*

11

*v. Peloton Interactive, Inc.*, 153 F.4th 288, 295 (2d Cir. 2025) (internal quotation marks and citations omitted). "Under this heightened pleading standard, 'plaintiffs must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so.'" *Id.* (quoting *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)).

Defendant argues that, even if Plaintiff Kerner "had alleged conduct that could give rise to a VCFA claim, Vermont law would not recognize such a claim against a life insurance company like [Defendant]." (Doc. 7-1 at 13.) To bring a claim under the VCFA, the plaintiff must be a consumer "who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 . . . or who sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 . . . or prohibited by any rule or regulation made pursuant to section 2453[.]" 9 V.S.A. § 2461(b).

"Whether the [VCFA] applies to the insurance industry is an open question." *JLD Props. of St. Albans, LLC*, 576 F. Supp. 3d at 179 (internal quotation marks omitted) (quoting *R.L. Vallee, Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 431 F. Supp. 2d 428, 442 (D. Vt. 2006)). In *Wilder v. Aetna Life and Casualty Insurance Co.*, the Vermont Supreme Court held "the selling of an insurance policy is not a contract for 'goods or services' within the meaning of 9 V.S.A. § 2461 allowing for civil penalties." 433 A.2d 309, 310 (Vt. 1981). Thereafter, in 1985, the Vermont Legislature amended the VCFA's definition of "[g]oods" or "services" to include "intangibles" and "services of any kind." 9 V.S.A. § 2451a(2). The Supreme Court of Vermont has not since determined whether the VCFA, as amended, applies to the insurance industry. *See Greene v. Stevens Gas Serv.*, 2004 VT 67, ¶ 10, 177 Vt. 90, 95, 858 A.2d 238, 243 ("Plaintiff and amicus curiae, the Vermont Attorney General, argue that *Wilder* is no longer good law after the 1985 amendments to the [VCFA]. We do not reach this argument.").

Defendant's argument that the insurance industry is "separately regulated" under the Vermont Insurance Trade Practices Act, 8 V.S.A. §§ 4721-4728, is persuasive although not dispositive. (Doc. 7-1 at 13.) This court need not determine whether the

12

VCFA applies to the insurance industry at this stage in the litigation because, even if it does, Plaintiff Kerner fails to plausibly allege that Defendant engaged in a deceptive or unfair trade practice.

In his opposition to Defendant's motion to dismiss, Plaintiff Kerner claims that the RMD Form "permits the contract owner to elect automatic RMD withdrawals but does not disclose that such withdrawals may be subject to surrender charges, nor does it identify circumstances under which surrender charges would apply." (Doc. 22 at 10-11.) Plaintiff Kerner also argues "the omission of language distinguishing discretionary withdrawals initiated by the policyholder from automatic RMD withdrawals initiated by the insurer's system is unconscionable and an unfair practice because it misleads the customer regarding the impact of their withdrawals and does not alert them to the insurer's system making withdrawals in the first place." *Id.* at 11-12.

On the Variable Annuity Election Form, which was provided for Plaintiff Kerner "to start or change a systematic withdrawal program from [his] annuity contract[,]" Plaintiff Kerner selected "Guaranteed Withdrawal Benefit (GWB) or Lifetime Withdrawal Guarantee (LWG)[.]" (Doc. 10-3 at 1, 3) (emphasis omitted). The RMD Form was provided to Plaintiff Kerner "for [his] convenience in setting up [RMD] payments[,]" (Doc. 10-5 at 1), and, with respect to contracts "with GWB or LWG," the RMD Form states:

> The [RMD] for contracts with the [GWB] or the [LWG] rider may be larger than your [A]nnual Benefit Payment. In order to qualify for the increased RMD payment without the increase being considered an excess withdrawal, after the first contract year, you must enroll in our Automated RMD program only and elect annual payment frequency. You may not be enrolled in any other systematic withdrawal program (SWP). In such case[,] we will increase your Annual Benefit Payment to equal your most recently calculated RMD amount, if such amount is greater than your Annual Benefit Payment. *Any cumulative withdrawals you make to satisfy your [RMD] amount outside of the Automated RMD program will be treated as excess withdrawals if they exceed your Annual Benefit Payment, and this can have an adverse impact on the value of the benefit* (see the prospectus for details). *If you have taken or are considering taking a partial withdrawal from your contract, electing our Automated RMD program may*

13

> *significantly reduce the value of the GWB or LWG benefit.* Prior to requesting our Automated RMD program for your contract[,] you should consult with your representative and discontinue any active SWP program.

(Doc. 10-5 at 1) (emphasis supplied and omitted). This warning is set forth on the first page of the RMD Form, and Plaintiff Kerner signed his name directly below it. Plaintiff Kerner opted into Defendant's Automated RMD program, under which Defendant would "calculate [Plaintiff Kerner's] RMD amount and distribute the payments[.]" *Id.* at 2.

With regard to the effect of excessive withdrawals, the MetLife Contract states:

> If a withdrawal results in cumulative withdrawals for the current Contract Year exceeding the Annual Benefit Payment, an additional reduction to the Remaining Guaranteed Withdrawal Amount may be made. This additional reduction will be equal to the difference between the Remaining Guaranteed Withdrawal Amount after the withdrawal and the Account Value after the withdrawal (if lower).

***

> Your initial Annual Benefit Payment equals the GWB Withdrawal Rate shown on the Contract Schedule multiplied by the initial Total Guaranteed Withdrawal Amount.

> Each time the Total Guaranteed Withdrawal Amount is increased or reduced . . . , the Annual Benefit Payment will be recalculated to equal the GWB Withdrawal Rate multiplied by the newly recalculated Total Guaranteed Withdrawal Amount.

(Doc. 10-1 at 24.) This information is provided on page 34 of the 46-page MetLife Contract and is written with similar font and in similar font size as the remainder of the contract. Plaintiff Kerner signed his name on the MetLife Contract approximately two pages above and approximately four pages below this section discussing over withdrawals.

Contrary to Plaintiff Kerner's argument, the Variable Annuity Form, the RMD Form, and the MetLife Contract made it clear that withdrawals above the RMD amount would result in surrender charges, that Defendant would make automatic RMD withdrawals according to its own calculation, that Plaintiff Kerner should not make additional withdrawals under the Automated RMD program, that cumulative withdrawals exceeding the Annual Benefit Payment would result in surrender charges, and that any

14

withdrawals made by Plaintiff Kerner in addition to Defendant's automatic RMD withdrawals which exceeded the Annual Benefit Payment would result in a surrender charges. The MetLife Contract specified how the potential surrender charges would be calculated. Plaintiff Kerner does not plead with particularity how and why Defendant's explanation is misleading or unfair. *See Crossman v. Denecker Chevrolet, Inc.*, 2023 WL 7490137, at *1 (Vt. Nov. 13, 2023) ("[A] VCPA claim requires proof that the defendant made 'a representation, practice, or omission likely to mislead the consumer.'") (citation omitted).

Although Plaintiff Kerner claims "the RMD penalty clause" "was hidden due to the use of two forms[,]" (Doc. 22 at 10), the Complaint does not allege any facts supporting this argument. To the contrary, both the MetLife Contract and the RMD Form clearly state that withdrawals over the course of a contract year which exceeded Plaintiff Kerner's Annual Benefit Payment would result in surrender charges.

To contend that certain statements of Defendant's "were false and misleading," Plaintiff Kerner must specify "why and how that is so.'" *Peloton Interactive, Inc.*, 153 F.4th at 295 (internal quotation marks and citations omitted). Here, he has failed to do so. Plaintiff Kerner therefore does not allege with particularity that Defendant engaged in a deceptive or unfair trade practice under the VCFA, and his consumer fraud claim is DISMISSED.

### H.    Whether Plaintiff Kerner's Breach of Fiduciary Duty Claim Should Be Dismissed (Count III).

Defendant argues that Plaintiff Kerner's breach of fiduciary claim must be dismissed because, "[u]nder Vermont law, a life insurance company like [Defendant] is not in a fiduciary relationship with its contract owners." (Doc. 7-1 at 15) (citations omitted). In Vermont, "[a] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Sutton v. Vermont Reg'l Ctr.*, 2019 VT 71, ¶ 75, 212 Vt. 612, 238 A.3d 608, 637 (quoting Restatement (Second) of Torts § 874). "One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from

15

a breach of duty imposed by the relation." *Id.* (quoting Restatement (Second) of Torts § 874 cmt. (a)).

In some circumstances, Vermont courts have found that insurers owe no fiduciary duties to their insured. *See Buote v. Verizon New England*, 190 F. Supp. 2d 693, 703 n.10 (D. Vt. 2002) ("An insurer does not owe a fiduciary duty to its insured with regard to a first-party insurance agreement[.]"); *Lauzon v. State Farm Mut. Auto. Ins. Co.*, 674 A.2d 1246, 1248 (Vt. 1995) ("An insurer owes no fiduciary duty to its insured in a claim arising under an uninsured motorist provision."). The Vermont Supreme Court, however, has never held that a fiduciary relationship cannot arise in the insurance context. Assuming *arguendo* that Defendant owed Plaintiff Kerner fiduciary duties, there are no plausible allegations that Defendant has breached them.

Plaintiff Kerner next argues his Complaint "allege[s] that Defendant designed, marketed, and administered an annuity with an automatic RMD feature tied to a disproportionate penalty structure while representing the feature as routine, compliant, and cost-neutral[]"[6] and that "Defendant's omissions and misleading statements breached duties to disclose material information necessary for informed decision-making by the policyholder and his advisor, particularly where automatic withdrawals could trigger surrender charges, market value adjustments, or other punitive consequences outside the policyholder's direction."[7] (Doc. 22 at 14-15.) These arguments are contradicted by the documents upon which they rely, and the documents govern. *See, e.g., Blue Tree Hotels Inv. (Canada), Ltd.*, 369 F.3d at 222. Plaintiff Kerner identifies no fraudulent or deceptive language contained therein.

According to Plaintiff Kerner, "[t]aken together, these facts plausibly allege that Defendant breached fiduciary and quasi-fiduciary duties by structuring, concealing, and enforcing an automatic penalty mechanism adverse to [Plaintiff Kerner's] interests[.]" (Doc. 22 at 15.) Without more, these allegations remain conclusory and bereft of the

---

[6] These allegations are not contained in the Complaint.

[7] *See supra* note 6.

factual support required by *Twombly/Iqbal*. *See Tsetsekos v. Horizon Blue Cross Blue Shield of N.J.*, 2025 WL 2773101, at *4 (S.D.N.Y. Sept. 29, 2025) ("Th[e] absence of specific, factual allegations renders [plaintiff's] claim implausible under the pleading standards of *Twombly* and *Iqbal*, which require more than mere labels and conclusions.") (citations omitted).

For the reasons stated above, Plaintiff Kerner fails to plausibly plead a breach of fiduciary duty, and this claim is DISMISSED.

## I.    Whether Plaintiff Kerner's Unconscionable Penalty Claim Should Be Dismissed (Count IV).

"Generally, once accepted, parties are bound by the clear and unambiguous terms of their contract. However, a contract may still be set aside if the circumstances of the agreement were unconscionable." *Falcao v. Richardson*, 2024 VT 78, ¶ 16, 220 Vt. 310, 316-17, 329 A.3d 208, 212 (alterations adopted) (internal quotation marks and internal citation omitted). "In general, 'whether a contract is unconscionable may turn on substantive fairness of terms or factors relevant to formation of a contract.'" *Lacroix v. Rysz*, 2025 VT 16, ¶ 13, 336 A.3d 321, 326 (citation omitted). "Unconscionability is measured based on the circumstances at the time the agreement is entered." *Id.* (emphasis and citations omitted). "[T]he plain language of an unambiguous contract prevails absent a 'showing of unfairness, undue oppression, or unconscionability[]'" and "[a]bsent other evidence of coercion or lack of meaningful choice[.]" *Falcao*, 2024 VT 78, ¶¶ 17, 20, 220 Vt. at 317-18, 329 A.3d at 213-14 (citation omitted). A contract is not unconscionable where its challenged terms "were not hidden in fine print and were not otherwise substantively unfair or unreasonably [un]favorable[.]" *Id.* at ¶ 20, 220 Vt. at 318, 329 A.3d at 213 (collecting cases).

Plaintiff Kerner contends that the "penalty clause" was unconscionable because, "[i]f [an] annuity company failed to adequately disclose the RMD penalty clause and its implications, this could support a claim of procedural unconscionability." (Doc. 22 at 16.)[8] He does not, however, allege procedural or substantive unconscionability at the

---

[8] In his opposition to Defendant's motion to dismiss, Plaintiff Kerner argues that his "claim

inception of the agreement, but rather alleges it took place thereafter, when the over withdrawal occurred. He does not allege duress or coercion, an inability to read or understand the contracts or forms, or an inability to seek further information before the RMD and Variable Annuity Election Forms were signed.

Without plausible factual allegations alleging substantive or procedural unfairness or deprivation of a meaningful choice, Plaintiff Kerner does not plausibly allege that Defendant's "penalty clause" was unconscionable, and the claim is DISMISSED.

### J.    Whether Plaintiffs Should Be Granted Leave to Amend.

Pursuant to Fed. R. Civ. P. 15(a)(2), courts "should freely give leave" to amend a complaint "when justice so requires." "Leave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Because no grounds for denying Plaintiffs leave to amend exist and Defendant does not argue otherwise, it is hereby GRANTED.

---

concerning an 'exclusive and unreasonable penalty' sets forth a breach of contract claim." (Doc. 22 at 16) (capitalization removed). It is, however, not framed as such as it identifies no contractual promise that was breached. *See Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 810 F. App'x 17, 20 (2d Cir. 2020) ("[A] complaint may not be amended by advocating a different theory of liability in an opposition brief wholly unsupported by factual allegations in the complaint.") (citation omitted).

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's motion to dismiss, (Doc. 7), and GRANTS Plaintiffs leave to file an Amended Complaint within twenty (20) days of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 20th day of July, 2026.

Christina Reiss, Chief Judge
United States District Court